HALL, Judge.
This case grows out of a real estate contract dated August 12, 1959 under the terms of which plaintiff agreed to purchase from the owners, Mr. and Mrs. Edward J. Rodriguez, and they agreed to sell to him, a certain piece of commercial real estate situated on Jefferson Highway in Jefferson Parish. The transaction was handled through the office of Plardie-Meric, Inc., a real estate agency, and in connection with the contract plaintiff posted a $3,000.00 deposit with *372 Hardie-Meric, Inc. The sale was never consummated.
Plaintiff sued the owners and the real estate agency in solido seeking to recover double the deposit alleging the failure or refusal of the owners to make a proper and timely tender of title. Alternatively plaintiff sought to have the contract annulled and his deposit returned on account of misrepresentation and fraud on the part of the real estate agent and its employees, and on other grounds as hereinafter set forth.
All defendants filed general denials to plaintiff’s allegations. In addition Mr. and Mrs. Rodriguez, as vendors, reconvened alleging that plaintiff himself breached the contract by refusing to accept title and prayed that plaintiff’s deposit be judicially declared forfeited. They further prayed that in accordance with the terms of the contract the amount of the real estate commission ($1,800.00) to be paid to Hardie-Meric, Inc., out of the fund on deposit and that they (Mr. and Mrs. Rodriguez) have judgment against plaintiff for the amount of the commission plus attorney’s fees in the sum of $750.00. Hardie-Meric, Inc., also reconvened on substantially the same grounds and prayed that it have judgment against plaintiff for its $1,800.00 commission plus $750.00 as attorney’s fees.
Following trial on the merits, judgment was rendered in favor of all defendants, dismissing plaintiff’s suit. Further judgment was rendered in favor of reconvenors declaring the forfeiture of plaintiff’s $3,000.-00 deposit, and granting judgment against plaintiff in favor of Mr. and Mrs. Rodriguez for $1,800.00. The judgment further ordered Hardie-Meric, Inc., to retain out of the forfeited deposit the sum of $1,800.00 representing its commission and to pay over to Mr. and Mrs. Rodriguez the balance of said deposit. In addition Hardie-Meric, Inc., was granted judg'ment against plaintiff for $500.00 as attorney’s fees.
The sequence of events leading up to the present suit is as follows: Plaintiff and his wife desired to purchase a new location for a dress shop which plaintiff’s wife operated. They testified that the parking area available at the old shop was insufficient. Learning, probably through an advertisement, that Mr. and Mrs. Rodriguez had a combination radio shop and living quarters for sale located at 4415 Jefferson Highway they called on Mr. and Mrs. Rodriguez on the night of August 10, 1959 and were shown through the living quarters. On the next night, August 11, 1959 plaintiff and his wife met with a Mr. Benedetto, a salesman for Hardie-Meric, Inc., who had the listing for the property. This meeting, according to plaintiff’s testimony, took place in front of the radio shop. At this meeting plaintiff signed an offer to purchase the property for $25,000.00 conditioned upon the availability of a loan of $17,500.00 for twenty years at 6% interest. This offer was rejected by the owners.
On the morning of August 12, 1959 Mr. Benedetto went to plaintiff’s place of employment and informed him of the rejection of his offer. Whereupon, Benedetto filled out another offer, (dated August 12, 1959) this time for $30,000.00 which plaintiff signed for submission to Mr. and Mrs. Rodriguez, the owners. This offer was accepted by the owners on the same day.
Plaintiff testified that about a week after the contract was signed he and his wife saw the property for the first time during daylight hours and didn’t like what they saw, particularly the parking facilities. He further testified that about three weeks later he definitely “decided not to buy it” following a discussion with several merchants in the area who told him that the neighbors ‘“would not allow” angle parking in the driveway. Plaintiff contacted Hardie-Meric, Inc., seeking to be released from the contract. Later, he retained counsel who instructed him to notify Hardie-Meric, Inc., that he would not go through with the deal. Exactly when this took place is not shown but the record discloses that counsel so notified Hardie-Meric, Inc., sometime prior to September 28, 1959.
*373 The contract of August 12, 1959 was contingent upon plaintiff, the owners, or the agent being able to obtain a twenty year mortgage loan for $21,000.00 at “6}/2-7%” within thirty days from date. The testimony shows that on August 13 plaintiff and Benedetto visited Guaranty Homestead Association but were unsuccessful in obtaining a loan. Thereafter they visited a number of homesteads. Finally, Hardie-Meric, Inc., secured a written commitment from Homestead Savings Association for a twenty year loan of $21,000.00 at 7% interest. This commitment was dated September 4, 1959. According to the terms of the contract the act of sale was to be passed before purchaser’s notary on or before October 12, 1959.
Plaintiff contends that he is entitled to the return of his deposit plus an equal amount as a penalty because according to the terms agreement of August 12, 1959 the vendors were obligated to tender title to him on October 12, 1959 or prior thereto, and they breached the contract by not making such a tender. This contention is without merit. Plaintiff had refused to take title long before the deadline date, and the vendors were not required to go through a vain and useless ceremony. See Standard Surety and Casualty Co. of New York v. Perrin, La.App., 19 So.2d 783; Stokelback v. Bradley, 159 La. 336, 105 So. 363.
In the alternative, plaintiff contends that the contract should be declared null and void and his deposit returned to him for the following reasons:
1.That after he had signed the offer of August 12, 1959 the provision of the agreement relative to the interest rate on the loan was fraudulently altered from words reading “at an annual rate not to exceed 6%” to words reading “at an annual interest rate not to exceed 6}/2-7%.” In the alternative plaintiff contends that the expression “not to exceed 6i/¿-7%” is too indefinite, vague and uncertain to result in a meeting of the minds between the parties. He further contends that the fraudulent alteration was made by Benedetto without the authority of Mr. and Mrs. Rodriguez and that as a result there was no meeting of the minds between plaintiff and the vendors relative to the altered agreement.
2. That there are contrary and conflicting provisions in the printed portion of said agreement and the handwritten portion thereof inserted by Benedetto which result in confusion and lack of consent of the parties to the agreement.
3. That Benedetto, agent of the defendant, Hardie-Meric, Inc., represented to plaintiff that the property had off street parking of an angular type sufficient to accommodate plaintiff’s customers; that this statement was false and fraudulent and constituted misrepresentation of a material fact sufficient to vitiate the contract.
4. That Benedetto as the agent of Har-die-Meric, Inc., represented to plaintiff that a tenant occupying the property at a $100.-00 monthly rental would remain on the premises, and that plaintiff increased his offer to $30,000.00 in reliance on this statement’-which turned out to be untrue.
5. That plaintiff’s offer to pay “¿4 of closing cost up to $300.00” was not accepted by the owners.
6. That by the terms of his offer and the representations of Benedetto plaintiff believed he was to get 61.6 feet of frontage on Jefferson Highway but according to the title the owners could convey only 57.4.
-1-
Plaintiff’s contention that Benedetto fraudulently altered his offer by changing the interest rate from “not to exceed 6%” to “not to exceed 6*6 — 7%” is not supported by anything except plaintiff’s own testimony. An examination of the document does not reveal to the naked eye that it has been altered. The testimony of Bene-detto directly conflicts with plaintiff’s testimony. He testified that before going to see plaintiff after the rejection of the first offer, *374 he spoke to Mr. Hardie, president of Har-die-Meric, Inc., who informed him that a loan could not be obtained at 6%, that the going rate at the time was 7%. He further testified that he discussed the interest rate with plaintiff before plaintiff signed the second offer and that it was agreed that they would try to get a loan at if possible, but if not, 7% would be paid. Benedetto testified that he inserted the words “not to exceed before plaintiff signed the offer. Mr. Rodriguez testified that the offer contained these words when it was submitted to him for acceptance. Moreover, there is evidence to show that plaintiff made and signed a loan application to First Homestead Association for a loan at 7%. The loan was not consummated because the homestead refused to lend the desired amount. While Mr. Harold J. Siener, secretary of First Homestead Association, could not produce this application (the reason being that after the loan fell through he gave the application to Mr. Meric at the latter’s request) he did produce a work-sheet from his files indicating in Mr. Siener’s handwriting that the loan was to be at ?% and testified that the work-sheet was in accordance with the application.
 The District Judge evidently did not believe plaintiff’s testimony that the contract had been altered. Moreover plaintiff’s testimony alone, being completely self-serving, would not be sufficient to show a fraudulent alteration. Evidence required to establish fraud must be completely convincing and stronger than a mere preponderance. See Blache v. Goodier, La.App., 22 So.2d 82; Bennett v. Robinson, La.App., 25 So.2d 641; West v. Kersieck, La.App., 104 So.2d 213.
-2 and 5-
Plaintiff’s second and fifth contentions stem from the same facts and can be considered together. The record discloses that on August 12, 1959 when Mr. Bene-detto suggested to plaintiff that he increase his offer to $30,000.00 plaintiff replied that if he had to pay this much he would not pay all the closing costs, but would pay half of the cost up to $300.00. As a consequence Benedetto wrote on the offer “also-cost of act of sale pd. by seller. see-below.” At the bottom of the offer there appears in Benedetto’s handwriting the following: “Purchaser agrees to pay 1/2 of closing cost up to $300.00.” This inscription was initialled by both Benedetto and: plaintiff. Plaintiff contends there was no' meeting of the minds between the parties-because Mr. and Mrs. Rodriguez did not initial the change and because the inscription appears at the bottom of the page below their signatures. We are of the opinion that the words “see below” was-sufficient to incorporate the lower provision into the body of the contract. Moreover Mr. Rodriguez testified that the lower provision was on the contract when it was-submitted to him for acceptance and that his signature evidenced his acceptance of everything written on the offer.
-3-
Plaintiff contends that Mr. Bene-detto represented to him that the property had space enough for off street parking of an angular type. Benedetto denies this. The record discloses that plaintiff and his-wife had ample opportunity to inspect the property, that they saw the front of the property and the driveways on each side of the building and knew that one of the driveways led to a parking space in the rear of the building. Photographs of the property contained in the record show that there was insufficient space in front of the building to accommodate more than two cars, but plaintiff testified that Benedetto told him he could have angular parking in the driveway to the right of the building as one views the photograph. Since this appears impossible without trespassing on the neighbor’s property, plaintiff testified that Benedetto represented to him that the neighbors would have no objection. Plaintiff made no effort to contact his neighbors. *375 The testimony of plaintiff as a whole impresses us that he was grabbing at straws in order to get out of a deal which he confesses he became dissatisfied with even before he talked to the merchants in the area about “angle parking” on the driveway. Evidently the District Court did not believe plaintiff’s story.
-4—
Plaintiff also contends that Benedetto told him that the property would pass to him with a tenant occupying the rear of the premises. Plaintiff admitted at the trial that he knew the tenant had only a month to month lease and could leave at will. In fact the contract shows on its face that the lease was a monthly lease. Plaintiff did not contact the tenant. Benedetto denies making any representations to plaintiff regarding the tenant.
-6-
In the contract of August 12, 1959 plaintiff offered to purchase and Mr. and Mrs. Rodriguez agreed to sell “4415 Jefferson Hyw — Jefferson Parish, La. on graounds measuring about 61%o x 145'4"/133'1" or as per title.” After the trial below had commenced plaintiff’s attorney discovered that the owner’s title called for a frontage or width on Jefferson Highway of only 57.4 feet, a deficiency of 4.2 feet. Thereupon plaintiff with leave of court filed a supplemental petition in which he alleged that Benedetto, the salesman, represented to him that the property had a frontage of 61.6 feet on the Highway and that the frontage extended from a utility pole on one side to the building adjacent to the property on the other side; that this was the property he intended to buy; and that the contract should be annulled because it was impossible for the owners to convey that frontage.
Plaintiff’s testimony corroborated by that of his wife is that when they met with Benedetto on the night of August 11, 1959 Benedetto showed them where the side boundary lines were, saying that the frontage extended from- a telephone pole on the Central Avenue side of the property to a building on the opposite side, and that the property included both the driveway on the left and the driveway on the right of the radio shop. Plaintiff further testified that Mr. Rodriguez also told him “the property goes to the telephone pole and includes both driveways.”
Benedetto denied that he told them anything about “walls or poles” and stated “I didn’t put my finger on any landmark.” Benedetto admitted however that he told plaintiff and his wife that the property was 61.6 wide according to his listing and that he told them that both driveways belonged to Mr. and Mrs. Rodriguez and was part of the property.
Regardless of whether plaintiff was told the frontage extended from the telephone pole on one side to the building on the opposite side, it is clear the property the salesman, Benedetto, showed plaintiff and his wife, and what plaintiff intended to buy, was a building having a driveway on each side. That the driveways were a material factor in the sale cannot be controverted.
However, it is impossible for us to tell from the record as presently made up whether the 4.2 feet title deficiency has any effect on the driveways on either of them, and if so to what extent. Since we regard this as the vital point in the whole case (see Hunley v. Ascani, 174 La. 712, 141 So. 385; Scurria v. Russo, La.App., 134 So.2d 679; Papalia v. Hartson, La.App., 52 So.2d 775) we deem it best to remand the case for further evidence.
Before doing so we feel obliged to consider a further contention made on behalf of plaintiff which is not covered by his pleadings, viz. that the contract of August 12, 1959 is null and void because the $21,-000.00 loan was never obtained.
The facts are as follows: When First Homestead Association decided that it *376 would not make a loan on the property in excess of $17,500.00 Mr. Siener, the secretary, notified Mr. Meric. This was on September 3, 1959. Mr. Meric thereupon called at First Homestead, picked up plaintiff’s application, and took it to Mr. J. C. DeBlanc, Assistant-Vice-President of Homestead Savings Association, and requested a loan from that association. As a result of that visit Mr. DeBlanc prepared in Meric’s presence, and delivered to him, a letter addressed to Hardie-Meric, Inc., written on the association’s letter head which reads as follows:
“New Orleans, La.
September 4, 1959
Re 4415 Jefferson Highway
Jefferson Parish, La.
Gentlemen:
This is to certify that this office will approve a loan to Mr. and Mrs. Howard E. Kindred on the above property, subject to an up-to-date Central Appraisal Bureau appraisal on this property, in the amount of $21,000.00, 20 years, 7%.
It is my understanding that the purchase price of this property is $30,000.-00, with $9,000.00 cash down payment. Yours truly,
(sig) J. C. DeBlanc
Ass’t. Vice-President”
Upon receiving this letter Mr. Meric wrote a letter to plaintiff dated September 4, 1959 in which he notified plaintiff that “Homestead Savings Association has approved your loan” and called his attention to the fact that the act of sale was to be passed on or before October 12, 1959.
Plaintiff contends that Hardie-Me-ric, Inc., in this letter represented to him that a final approval of a loan had been obtained, and that his purchase agreement was never obtained. Considerable testimony was taken as to whether or not Mr. De-Blanc’s letter was a firm commitment binding on the homestead. It seems to us however that if plaintiff entertained any doubts about the commitment the'burden was on him to clarify the matter with Homestead Savings Association, and that in the face of such a letter plaintiff cannot sit back and do nothing and then contend that a loan was “unobtainable”. Of course the loan was never consummated because plaintiff refused to take title on other grounds sometime before September 28, 1959.
In conclusion we are of the opinion that there is no merit in any of plaintiff’s contentions save perhaps his contention relative to the 4.2' title deficiency.
For the foregoing reasons the judgment appealed from is set aside and the cause is remanded to the District Court with instructions to receive evidence in the form of a survey or scale drawing delineating the boundaries of the property purchased by Mr. and Mrs. Edward J. Rodriguez from Guaranty Savings and Homestead Association as per act before Frederick C. Querens, Notary Public, dated November 20, 1951; and also delineating the boundaries of the property purchased by Walter H. Castay from Mrs. Lillian Ann Guillot, wife of and Fred J. White, Jr., as per act before Frederick C. Querens, Notary Public, dated September 23, 1940, said survey or scale drawing to show all buildings and improvements situated or partially situated on such properties and to show the position of the paved portion of the two driveways with reference to the sidelines of such properties and with reference to the improvements thereon; said survey or scale drawing also to show the position of the “utility pole” and the adjacent building” referred to in these proceedings; and the District Court is instructed to receive such other evidence, documentary or verbal which may be pertinent thereto and to render judgment not inconsistent with the views expressed herein; all costs in both courts to await final determination of the cause.
Judgment set aside and case remanded with instructions.